JOON H. KIM
Acting United States Attorney
By: CHRISTOPHER B. HARWOOD
Assistant United States Attorney
86 Chambers Street, 3rd Fl.
New York, NY 10007
Tel.: (212) 637-2728
Email: Christopher.Harwood@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>                              Plaintiff,<br><br>           v.<br><br>AMERICAN UNIVERSITY OF BEIRUT,<br><br>                              Defendant. | 14 Civ. 6899 (JPO) |
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff-Intervenor,<br><br>           v.<br><br>AMERICAN UNIVERSITY OF BEIRUT,<br><br>                              Defendant. | |

Plaintiff United States of America ("United States" or "Government"), by its attorney, Joon H. Kim, Acting United States Attorney for the Southern District of New York, brings this action against American University of Beirut ("AUB"), alleging upon information and belief as follows:

1

**PRELIMINARY STATEMENT**

1. This is a civil action brought by the United States against AUB under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and the common law to recover damages sustained by, and civil penalties owed to, the United States based on AUB's violation of the FCA as a result of it having provided material support or resources to three entities that were included on the U.S. Office of Foreign Assets Control's ("OFAC") Specially Designated Nationals and Blocked Persons List ("SDN List"). The three SDN List entities to which AUB provided material support or resources are al Nour Radio, al Manar TV, and Jihad al-Binaa. AUB provided material support or resources to these SDN List entities during the period December 2007 through March 2016 ("Covered Period").

2. OFAC's SDN List is a list of individuals and entities owned or controlled by, or acting for or on behalf of, countries that support terrorism or otherwise engage in conduct antithetical to U.S. interests. The SDN List also lists individuals and entities, such as terrorists and narcotics traffickers, who have been identified as engaging in conduct antithetical to U.S. interests under programs that are not country-specific. Collectively, such individuals and entities are referred to as "Specially Designated Nationals" or "SDNs." The U.S.-based assets of SDNs are frozen and U.S. persons generally are prohibited from interacting with them.

3. Al Nour Radio and al Manar TV have been on the SDN List since March 2006, while Jihad al-Binaa has been on the SDN List since February 2007.

4. AUB is an institution of higher education operating in Beirut, Lebanon, with approximately 8,000 students and 800 faculty members. AUB bases its educational philosophy, standards, and practices on the American liberal arts model of higher education, and according to

its Mission Statement, it has a policy of "encourage[ing] freedom of thought and expression and seek[ing] to foster tolerance and respect for diversity and dialogue."

5.  Since at least 2007, AUB has received monetary grants from the U.S. Agency for International Development ("USAID") to fund various university projects and programs. As a condition of receiving those grants, AUB submitted certifications to USAID each year in which it represented, *inter alia*, that it "has not provided, and will take all reasonable steps to ensure that it does not and will not knowingly provide, material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts, or has committed, attempted to commit, facilitated, or participated in terrorist acts." In these annual certifications, AUB further represented that "[b]efore providing any material support or resources to an individual or entity, [it] will verify that the individual or entity does not appear . . . on the master list of Specially Designated Nationals and Blocked Persons which list is maintained by the U.S. Treasury's Office of Foreign Assets Control . . . ." The annual certifications defined "material support and resources" to include, among other things, "training, expert advice or assistance, . . . [and] personnel."

6.  Notwithstanding the above certifications, during the Covered Period, AUB provided specialized training and expert advice to representatives of two SDN List entities, al Nour Radio and al Manar TV. Moreover, by way of a database that AUB maintained on its public website — which AUB referred to as the "NGO database" — AUB provided a mechanism to connect a third SDN List entity, Jihad al-Binaa, with persons interested in assisting it.

7.  More specifically, with respect to the training and expert advice, AUB held three multi-day training workshops (in 2007, 2008 and 2009) during which it provided specialized

3

training on a variety of media topics to a group of journalists that included representatives of al Nour Radio and al Manar TV. For example, one of the training workshops, titled "Citizen/Online Journalism," was conducted over five days in December 2007, and consisted of two Internet and news media experts providing training to the attendees — one of whom was from al Nour Radio — on various topics, including the creation of online blogs; photo, audio and video editing and production; linking to other websites; podcasting; packaging stories for multimedia and different platforms; and presentation of final products. The three training workshops provided the two SDN List entities with knowledge and insight they could use to more effectively communicate their desired message and reach their target audience. At the time the three training workshops were conducted, AUB was on notice that they were being attended by representatives of al Nour Radio and al Manar TV.

8. With respect to the NGO database, AUB maintained that database on its public website for the stated purpose of connecting Non-Governmental Organizations ("NGOs") with students and others interested in assisting them. During a portion of the Covered Period, including in 2014 and 2015, AUB allowed Jihad al-Binaa — as well as contact information for Jihad al-Binaa — to be included in the NGO database. By doing so, AUB provided a mechanism for this SDN List entity to recruit persons interested in assisting it.

9. Because AUB provided specialized journalism training to representatives of two SDN List entities and included another SDN List entity in the NGO database, its certifications to USAID during the Covered Period that it had not provided and would take all reasonable steps to ensure that it did not knowingly provide material support or resources to SDN List entities were false. As a result of those false certifications, AUB induced USAID to provide it with a significant amount of grant funding that, but for the false certifications, USAID would not have

provided. Consequently, AUB is liable under the FCA and the common law for damages and penalties, as discussed in detail below.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims brought herein under the False Claims Act pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345, and over the remaining claims pursuant to 28 U.S.C. § 1345.

11. Venue lies in this district pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1391(c), because AUB maintains an office and conducts business in this district.

## PARTIES

12. Plaintiff is the United States of America suing on its own behalf and on behalf of USAID.

13. Defendant AUB is a western-style, not-for-profit university operating in Beirut, Lebanon. It was chartered in New York State (more than 150 years ago) and is governed by the New York Education Law and New York's Not-for-Profit Corporation Law. On its public website, AUB describes itself as "[a] teaching-centered research university." The website further states that AUB "encourages freedom of thought and expression and seeks to graduate men and women committed to creative and critical thinking, life-long learning, personal integrity, civic responsibility, and leadership."

14. Moreover, AUB's Mission Statement provides as follows:

The American University of Beirut (AUB) is an institution of higher learning founded to provide excellence in education, to participate in the advancement of knowledge through research, and to serve the peoples of the Middle East and beyond. Chartered in New York State in 1863, the university bases its educational philosophy, standards, and practices on the American liberal arts model of higher education. The university believes deeply in and encourages freedom of thought and expression and seeks to foster tolerance and respect for diversity and dialogue.

> Graduates will be individuals committed to creative and critical thinking, life-long learning, personal integrity, civic responsibility, and leadership.

## FACTUAL ALLEGATIONS

### I. The False Claims Act

15. The FCA establishes liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).[1] "Knowingly" is defined to include actual knowledge of, as well as reckless disregard or deliberate ignorance of, the truth or falsity of the information. *Id.* § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

16. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999), the FCA civil penalties are $5,500 to $11,000 for violations, such as those alleged here, occurring on or after September 29, 1999.

---

[1] In May 2009, the False Claims Act was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 ("FERA"). Section 3729(a)(1)(B) was formerly Section 3729(a)(2), and is applicable to AUB's conduct for the entire time period relevant to this Complaint by virtue of Section 4(f) of FERA. Section 3279(a)(1)(A), formerly Section 3729(a)(1) of the FCA prior to FERA, and as amended in 1986, applies to conduct on or after May 20, 2009. Section 3729(a)(1) of the pre-FERA FCA provides, in pertinent part, that:

> (a)   Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval . . .
>
> \* \* \*
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

## II.    AUB's Certifications to USAID

17.    Since at least 2007, AUB has received monetary grants from USAID to fund various projects and programs. Among those projects and programs is a scholarship program pursuant to which AUB provides financial aid to students who, absent such aid, would not be able to pursue an education at AUB.

18.    As a condition of receiving the above-referenced monetary grants, and throughout the Covered Period, USAID required AUB to submit an annual application for grant funding. Each of those applications contained the following language to which USAID required AUB to certify:

> By signing and submitting this application, the prospective recipient [*i.e.*, AUB] provides the certifications set forth below:
>
> 1. The Recipient has not provided, and will take all reasonable steps to ensure that it does not and will not knowingly provide, material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts, or has committed, attempted to commit, facilitated, or participated in terrorist acts.
>
> 2. Specifically, in order to comply with its obligations under paragraph 1, the Recipient will take the following steps:
>
>     a. Before providing any material support or resources to an individual or entity, the Recipient will verify that the individual or entity does not appear (i) on the master list of Specially Designated Nationals and Blocked Persons which list is maintained by the U.S. Treasury's Office of Foreign Assets Control (OFAC) and is available online at OFAC's website: http://www.treas.gov/offices/eotffc/sdn/t11sdn.pdf, or (ii) on any supplementary list of prohibited individuals or entities that may be provided by USAID to the Recipient.
>
>     b. Before providing any material support or resources to an individual or entity, the Recipient will consider all information about that individual or entity of which it is aware or that is available to the public.

> c. The recipient will implement reasonable monitoring and oversight procedures to safeguard against assistance being diverted to support terrorist activity.

19. The annual applications that AUB submitted to USAID defined the term "material support and resources" to mean

> currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

20. The annual applications also contained the following language expressly incorporating the certification language therein into any subsequently issued grant award: "The Certification is an express term and condition of any agreement issued as a result of this application, and any violation of it shall be grounds for unilateral termination of the agreement by USAID prior to the end of its term."

21. In sum, as a condition of receiving grant funding from USAID, AUB certified annually that it had not provided and would take all reasonable steps to ensure that it did not knowingly provide material support or resources to SDN List entities.

### III. AUB Provided Material Support and Resources to Three SDN List Entities

22. Notwithstanding AUB's above-referenced certifications to USAID, during the Covered Period, AUB provided specialized journalism training to representatives of two SDN List entities. By way of the NGO database, AUB also provided a mechanism to connect a third SDN List entity with personnel interested in assisting it. Such conduct constituted material support or resources to these entities and therefore rendered false AUB's certifications to USAID.

### A.     AUB Provided Specialized Training to Two SDN List Entities

23.    AUB instituted a journalism training program ("JTP") in 2007 and operated that program through 2012.

24.    AUB's internal documents described the JTP as a mechanism through which AUB provided training to print, broadcast and online journalists from the Middle East and North Africa on various media topics, including "basic news reporting and writing, editing, investigative journalism, elections coverage, newsroom management, science/health/environmental journalism, citizen journalism, war/safety coverage, and online journalism." AUB's internal documents further identified the "aim" of the JTP as being "to upgrade and update journalists' knowledge and skills in the region."

25.    The training that AUB provided through the JTP took the form of multi-day workshops. Those workshops were taught by experienced journalists, highly-regarded academics, and/or representatives from government organizations. In its internal documents, AUB described "JTP trainers" as being "experts from the media, academia and other organizations."

26.    The individuals who were selected to participate in the JTP workshops were not required to pay any expenses related to the training they received. Moreover, in addition to the free training, such individuals received, *inter alia*, transportation to AUB for the training, as well as meals and accommodations throughout the training.

27.    AUB's internal documents reveal that during the period 2007 through 2009, AUB held three JTP workshops that were attended by journalists from al Nour Radio and al Manar TV, in their capacity as representatives of those entities. The three workshops were conducted in December 2007, March 2008, and November 2009.

28. Al Nour Radio and al Manar TV have been included in the SDN List since March 2006.

29. The information that appears below about the three JTP workshops that were attended by representatives of al Nour Radio and al Manar TV was taken directly from AUB's own summaries of the events. Those summaries were created contemporaneously with the events, and reflect AUB's awareness that representatives of al Nour Radio and al Manar TV were attending the events.

30. **December 2007 JTP Workshop.** In December 2007, AUB held a five-day workshop titled "Citizen/Online Journalism," at which two Internet and news media experts provided training to 10 journalists on "writing, photo, audio and video editing and production, linking to other sites, online ethics, podcasting, RSS [Rich Site Summary] feeds, packaging stories for multimedia and different platforms, and presentation of final products." One of the journalists who attended this workshop was from al Nour radio. AUB summarized the workshop by stating, *inter alia*, that "[w]eb and new[s] media experts . . . guided participants who took to blogging and cyber publishing like fish to water"; "[the participants] created a class blog as well as individual blogs on which they posted daily content produced during the workshops"; "[p]articipants felt so intrigued and challenged by on-line tools that they urged organizers to hold follow-up workshops on the topic"; and "[p]articipants represented [various media outlets, including] . . . Al Nour radio."

31. **March 2008 JTP Workshop.** In March 2008, AUB held a three-day workshop titled "Public Health Coverage," at which various experts, including a spokesman from Lebanon's Health Ministry, provided training to 15 journalists on, among other things, identifying health issues to cover; gathering information for health reports, features, interviews

and editorials; using photographs, graphics, audio and video for health stories; interviewing health officials; covering health emergencies, environmental and health disasters, and wars; and safety of journalists. One of the journalists who attended this workshop was from al Manar TV. In its summary of this workshop, AUB stated, *inter alia*, that "[j]ournalists from [various media outlets, including] . . . Al Manar TV, . . . bombarded [a spokesman from Lebanon's] Health Ministry . . . with questions on tackling emergencies and official dissemination of information."

33. **November 2009 JTP Workshop.** In November 2009, AUB held a five-day workshop titled "Media Coverage of Lebanese Parliament," at which various experts, including the head of the media department of the Lebanese Parliament, provided training to 11 journalists on how to effectively cover Lebanon's parliamentary activities. One of the journalists who attended this workshop was from al Nour Radio and another was from al Manar TV. AUB described "[t]he week-long workshop [as] focus[ing] on media coverage of Lebanon's parliament activities and . . . includ[ing] lectures, practice sessions, and training videos." AUB further summarized the workshop by stating, *inter alia*, that the "[t]rainers included [a] Lebanese media expert, a longtime reporter and editor dispatched by [a well-known, national media outlet], [a] TV correspondent . . . , and [the director of the] JTP"; "[the p]articipants also benefited from the experience of [a] veteran [from a regional media outlet], [a] former 'AP' correspondent . . . and her economist colleague"; and "the journalist [attendees] from [various media outlets, including] Al Manar TV . . . and Al Nour Radio had to overcome basic assumptions, relearn rules governing legislative procedures, figure out committee responsibilities, and tackle complex fiscal and monetary policies that stump experts."

### B.  AUB Allowed an SDN List Entity to Be Included in the NGO Database

33. During the Covered Period, AUB maintained a public website that included the NGO database.

34. AUB's website described the NGO database as having "systematized [the details of NGOs operating in Lebanon] into an easily accessible and publicly available database." AUB's website further identified the "aim" of the NGO database as "to connect . . . students[,] citizens and organizations (private and public) . . . with different players of the civil society." AUB's website observed that the NGO database was the "first of its kind in Lebanon and seeks to make the details of NGOs' operations available for all parties interested in collaboration."

35. To connect specific NGOs with individuals interested in assisting them, the NGO database included the names of, and contact information for, approximately 30 NGOs. The contact information included each NGO's telephone number, fax number, email address, and website address.

36. One of the NGOs included in the NGO database was Jihad al-Binaa, an SDN List entity since February 2007. Jihad Al-Binaa was included in the NGO database for a number of years during the Covered Period, including in 2014 and 2015.

### C.  The Journalism Training Provided to Two SDN List Entities and the Inclusion of a Third SDN List Entity in the NGO Database Constituted Material Support or Resources

37. The journalism training that AUB provided to al Nour Radio and al Manar TV constituted material support or resources as defined by the annual applications for funding that AUB submitted to USAID.

38. As set forth above, the certifications that AUB signed defined material support and resources as including "training" and "expert advice or assistance," and those terms have

12

been further defined in relevant statutes and case law in ways to clearly include the type of specialized journalism training at issue here. *See, e.g.*, 18 U.S.C. § 2339A(b)(2) (defining training as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge"; *id.* § 2339A(b)(3) (defining expert advice or assistance as "advice or assistance derived from scientific, technical or other specialized knowledge").

39. The inclusion of Jihad al-Binaa in the NGO database also constituted material support or resources. AUB's own documents establish that the purpose of the NGO database was to provide a way for individuals interested in assisting particular NGOs to get in touch with those NGOs. Providing a mechanism — including contact information — through which an individual interested in assisting an SDN List entity could get in touch with that entity qualifies as material support or resources. Notably, the certifications that AUB signed define material support and resources as including "personnel."

### D. AUB Failed to Take Reasonable Steps to Ensure that It Did Not Provide Material Support or Resources to SDN List Entities

40. As set forth above, through its annual certifications to USAID, AUB represented that it would "take all reasonable steps to ensure that it does not and will not knowingly provide[] material support or resources" to any SDN List entity. AUB failed to take such steps.

41. AUB also represented through its annual certifications that "[b]efore providing any material support or resources to an individual or entity, [it would] consider all information about that individual or entity of which it [was] aware or that [was] available to the public," and that it would "implement reasonable monitoring and oversight procedures to safeguard against assistance being diverted to support terrorist activity." AUB did not do these things.

42. AUB's internal documents reflect that, at the time of the relevant journalism training programs, it was on notice that certain of the attendees were attending the programs in

their capacity as representatives of al Nour Radio and al Manar TV. Had AUB taken "reasonable steps" to ensure compliance with its certifications, it would not have allowed such individuals to receive the journalism training.

43. AUB was similarly reckless in allowing an SDN List entity to be included in the NGO database.

44. During the Covered Period, AUB failed to put in place sufficient safeguards to ensure that it was not providing material support or resources to SDN List entities. With respect to its journalism training programs and the NGO database in particular, there was no training of staff or monitoring put in place to guard against participation by SDN List entities or representatives of those entities.

### IV. As a result of its False Certifications to USAID, AUB Received a Significant Amount of Grant Funding to Which It Was Not Entitled

45. As set forth above, during the Covered Period, AUB received monetary grants from USAID to fund various projects and programs.

46. As a condition of receiving that grant funding, AUB submitted to USAID the above-referenced annual applications, in which AUB certified, *inter alia*, that it had not provided and would take all reasonable steps to ensure that it did not knowingly provide material support or resources to SDN List entities. Those certifications were expressly incorporated into all subsequent grant funding requests submitted by AUB to USAID.

47. Had USAID known that AUB had provided journalism training to representatives of SDN List entities and had included an SDN List entity in the NGO database, USAID would have taken action against AUB, including, at a minimum, denying grant funding to AUB while such conduct continued. Moreover, USAID would have refused to approve future applications

for grant funding absent suitable assurances by AUB that such conduct — and any similar conduct — would not recur in the future.

## FIRST COUNT

**Violations of the False Claims Act: Presenting False Claims for Payment
(31 U.S.C. § 3729(a)(1) (2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A))**

48. The United States incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

49. The United States seeks relief against AUB under 31 U.S.C. § 3729(a)(1) (2006) and, as amended, 31 U.S.C. § 3729(a)(1)(A).

50. As set forth above, in connection with its applications for grant funding, AUB submitted certifications to USAID stating, *inter alia*, that it had not provided and would take all reasonable steps to ensure that it did not knowingly provide material support or resources to SDN List entities. Those certifications were false because, as set forth above, AUB provided journalism training to representatives of two SDN List entities and included a third SDN List entity in the NGO database. AUB's false certifications induced USAID to (1) approve AUB's applications for grant funding, and (2) provide AUB with monetary grants that, but for the false certifications, USAID would not have provided. As a result, AUB knowingly presented or caused to be presented false or fraudulent claims for payment or approval to USAID in violation of 31 U.S.C. § 3729(a)(1)(2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A).

51. By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## SECOND COUNT

**Violations of the False Claims Act: Use of False Statements**
**(31 U.S.C. § 3729(a)(2) (2006), and, as amended, 31 U.S.C. § 3729(a)(1)(B))**

52. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

53. The United States seeks relief against AUB under the False Claims Act, 31 U.S.C. § 3729(a)(2)(2006), and, as amended, 31 U.S.C. § 3729(a)(1)(B).

54. As set forth above, in connection with its applications for grant funding, AUB submitted certifications to USAID stating, *inter alia*, that it had not provided and would take all reasonable steps to ensure that it did not knowingly provide material support or resources to SDN List entities. Those certifications were false, and had the effect of inducing USAID to (1) approve AUB's applications for grant funding, and (2) provide AUB with monetary grants that, but for the false certifications, USAID would not have provided. Therefore, in connection with its applications to USAID for grant funding, AUB knowingly made or used, or caused others to make or use, false records or statements that were material to false or fraudulent claims for funding submitted to USAID.

55. By reason of those false records or statements, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## **THIRD COUNT**

### **Unjust Enrichment**

56. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

57. USAID provided monetary grants to AUB in reliance on certifications that (1) AUB submitted to it, and (2) were false as a result of AUB's provision of journalism training to representatives of two SDN List entities and its inclusion of a third SDN List entity in the NGO database, as set forth above. The circumstances of AUB's receipt of the monetary grants from USAID are such that, in equity and good conscience, AUB should not retain those funds, in an amount to be determined at trial.

WHEREFORE, the United States respectfully requests judgment against AUB as follows:

a. On Counts One and Two (FCA), a judgment against AUB for treble damages and civil penalties to the maximum amount allowed by law;

b. On Count Three (common law), a judgment against AUB for damages to the extent allowed by law.

Dated: March 21, 2017
New York, New York

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

By: /s/ Christopher B. Harwood
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2728
Facsimile: (212) 637-2786

*Attorney for the United States of America*