David Abrams, Attorney at Law
299 Broadway, Suite 1700
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Southern District of New York

|  |  |
|---|---|
| United States of America ex rel. ▉▉▉▉▉▉▉▉▉▉ <br><br> Plaintiff-Relator, <br><br> - against - <br><br> American University of Beirut, <br><br> Defendant. | Index No.:14cv6899 (JPO) <br><br> **AMENDED COMPLAINT** |

Plaintiff-Relator, complaining of the Defendant by its attorney, David Abrams, Attorney at Law, respectfully sets forth and alleges as follows:

**I.   Nature of the Case**

1. This is a false claims act claim. The Qui Tam Plaintiff and Relator, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ alleges that the Defendant obtained USAID funding by means of fraudulent certifications that it does not support terrorists or discriminate.

**II.   Parties**

2. The Defendant American University of Beirut ("AUB") is a university based in Beirut, Lebanon. Although it is located overseas, its language of instruction is English; it is chartered by the New York educational authorities; and it is accredited by an American accreditation commission. The Defendant also maintains an office in Manhattan at 3 Dag Hammarskjold Plaza, 8th Floor, New York, New York, 10017.

3. The Relator, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is a New York not-for-profit corporation with a principal office in the State of New York, County of New York.

### IIa.   Compliance With Requirements of Suit

3a.   This matter was filed under seal pursuant to 31 U.S.C. Section 3730(b) on August 25, 2014; on or about the same day, a copy of the Complaint, Sealing Order, and Relator's disclosure of evidence were served on the Department of Justice and the United States Attorney for the Southern District of New York.

3b.   Relator will not serve the Complaint or Amended Complaint or any other papers in this matter until and unless it becomes unsealed. Thus, if the Complaint or Amended Complaint is served on the Defendant, it means that the matter has been duly unsealed.

### III.   Jurisdiction and Venue

4.   This Court has jurisdiction pursuant to 31 U.S.C. Section 3732(a) which provides that this type of action may be brought in any district where the Defendant resides or transacts business. In this case, the Defendant's IRS filings list its Manhattan office as its address.

### IV.   A Brief Statement of the Fraudulent Scheme

5.   AUB has received substantial USAID funding in recent years. In order to be eligible for funding, AUB had to execute certifications indicating that (1) it has not provided material support or resources to terrorists in the last 10 years; and (2) it does not engage in discrimination. As set forth below, these certifications were false when made.

### V.   The Specific Fraudulent Statements of the Defendant

6.   In order to obtain USAID dollars, the Defendant, through Peter Dorman, president at the time, executed a form entitled "Certifications, Assurances, and other Statements of the Recipient" on May 17, 2012; again on May 8, 2013; and also on earlier dates.

7.   Among other things, the form contained certifications as to (1) support of terrorism; and (2) non-discrimination. The terrorism certification states as follows:

> The Recipient to the best of its current knowledge, did not provide within the previous ten years, and will take all reasonable steps to ensure that it does not

and will not knowingly provide, material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts, or has committed, attempted to commit, facilitated, or participated in terrorist acts . . . .

The document in turn defines "material support or resources" as follows:

currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses false documentation or Identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

8. As set forth in more detail below, AUB has provided material support or resources to Hezbollah, Hamas, the Popular Front for the Liberation of Palestine, Jihad al Binaa, Al-Manar Television, and Al-Nour Radio.

9. All of these organizations are either Designated Foreign Terrorist Organizations or Specially Designated Global Terrorist entities.

10. Indeed, most of these organizations are well known for their genocidal rhetoric; their eagerness to attack innocent people, particularly Jewish Israelis, and/or their virulent anti-Semitism.

## VI. The Acts of the Defendant

11. The week of November 16, 2009, AUB hosted a week long "journalism training program" in which journalists were trained "on media coverage of Lebanon's parliament activities"; the training program included "lectures, practice sessions, and training videos"

12. A representative of Al Manar Television, Abbas Fneish, was permitted to attend the training session and participate in the training. Al Manar television has been a Specially Designated Global Terrorist organization since 2004.

13. In 2008, a similar training session was held by AUB which was attended by a representative of Al Manar. Another training session was held in that same year which was attended by a representative of Al-Nour Radio, Hadi Abdel Ghaffar. Al-Nour Radio was made a Specially Designated Global Terrorist organization in 2006.

14. On October 30 and 31, 2009, AUB, through its Issam Fares Institute, held a conference entitled "Governing Palestinian Refugee Camps in the Middle East." A representative of the Popular Front for the Liberation of Palestine, Marwan Abed el-Al, was permitted to attend and participate in the conference. In addition, a representative of Hamas, Rafat Murra, was permitted to attend and participate in the conference. Finally, a representative of Hezbollah, Atallah Hamoud, was permitted to attend and participate in the conference.

15. Hamas was made a Designated Foreign Terrorist Organization in 1997; Hezbollah was made a Designated Foreign Terrorist Organization in the same year; and the Popular Front for the Liberation of Palestine was also made a Designated Foreign Terrorist Organization in 1997.

16. The Issam Fares Institute's mission statement includes the following:

> Hosting public conferences, workshops and other gatherings that bring together policy officials, private sector and civil society leaders, scholars, students and the interested public for frank exchanges of views on timely issues, leading to more clarity and possible consensus on critical policies.

17. The president of AUB, Peter Dorman, has described the Issam Fares institute as "represent[ing] the very best of AUB's mission."

18. On February 22, 2010, AUB's Issam Fares Institute hosted a panel discussion on issues in the Middle East. The Institute invited a Hezbollah representative, Dr. Ibrahim Mousawi (Hezbollah spokesman) to participate in the discussion, which he did in one of the morning sessions. Indeed, AUB hired Dr. Mousawi to perform services as a lecturer at around the same time. Moreover, Dr. Mousawi received at least an MA from AUB.

19. On October 9, 2010, AUB's Issam Fares Institute hosted a roundtable discussion on "Palestinian Refugees." Representatives of Hamas (Yasser Azzam), the Popular Front for the Liberation of Palestine (Imad Loubani), and the Democratic Front for the Liberation of Palestine (Ahmad Abou Widdo) were permitted to attend and participate.

4

20. The week of March 11, 2013, AUB hosted an Israeli apartheid week. Leila Khaled was permitted to attend and speak on the evening of March 14, 2013. The presentation was characterized as "Talk by Palestinian hero Leila Khaled on her recent visit to Gaza."

21. Leila Khaled is a prominent member of the Popular Front for the Liberation of Palestine; in this role, she participated in the hijacking of TWA Flight 840 in 1969 and the attempted hijacking of El Al flight 219 in 1970.

22. Similarly, Ms. Khaled was a featured speaker in AUB's March 2011 Israel apartheid week. Indeed, in announcing her presentation, AUB proudly described her with three phrases: an "activist in the Palestinian resistance"; a "former AUB student" and a "hijacker."

23. Indeed, AUB proudly announced in 2010 that it was the first Middle Eastern university outside of "Palestine" to host an Israeli Apartheid Week. This was to "join the resistance against Israel."

24. A few years later, AUB's president confirmed that "AUB has always respected and complied with the laws of Lebanon, and always will, particularly the laws prohibiting the normalization of any kind of relations with Israel."

25. Nevertheless, in 2005 AUB honored a member of Israel's Knesset by allowing him to lecture at AUB. That citizen of Israel was Dr. Azmi Bishara, an Arab who later fled Israel amid charges of supporting Hezbollah. Needless to say, it is unlikely in the extreme that a Jewish Israeli would have been treated this way. Thus, AUB's anti-Israel policy is inextricably intertwined with anti-Semitism.

26. On April 1, 2005, AUB's Palestinian Cultural Club hosted a lecture entitled "The Situation of Palestinians in Lebanon's Camps." The lecture was presented by representatives of Hamas (Ousama Hamdan) and the Democratic Front for the Liberation of Palestine (Suheil Natour).

27. It should be noted that AUB requires that its clubs' activities be pre-approved by the club's advisor and the AUB Department of Student Activities. In any event, the event was scheduled in AUB's calendar of events for that month.

28. Incidentially, it should be noted that Ousama Hamdan has been reported as having stated the following:

> We all remember how the Jews used to slaughter Christians, in order to mix their blood in their holy matzos. This is not a figment of imagination or something taken from a film. It is a fact, acknowledged by their own books and by historical evidence. It happened everywhere, here and there.

29. Even today, AUB's web site contains an "NGO database." "The aim of this database is to connect vibrant students, citizens and organizations (private and public) interested in social work with the different players of the civil society. This initiative is first of its kind in Lebanon and seeks to make the details of NGOs' operations available for all parties interested in collaboration."

30. The database contains the name, telephone number, and address of the Jihad al Binaa Development Association. This NGO is apparently controlled by Hezbollah and was been a Specially Designated Global Terrorist organization since 2010.

31. Thus, it is clear that AUB has continually and systematically provided terrorists and terrorist organizations with training, legitimacy, and a platform to spread their hateful, genocidal, twisted views. Moreover, despite its claim to be a liberal, American-styled institution, it is clear that it is proudly anti-Israel and sympathetic to those who wish to destroy Israel and its Jewish population.

## VII. (Count I) Violation of the False Claims Act

32. The False Claims Act imposes liability on a person or entity who " knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.C. Section 3729(a)(1)(B)

33. The Courts have held that this can include false statements regarding eligibility to participate in a program. See United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 116 (2d Cir. 2010), rev'd on other grounds, 131 S.Ct. 1885 (2011) ("[C]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program.")

34. Thus, AUB's certifications regarding support of terrorism and non-discrimination violated the False Claims Act because they were false and required for eligibility for USAID dollars.

## VIII. Relief Sought

35. On behalf of the government, Relator is seeking judgment for the triple damages and civil penalties set forth in 31 U.S.C. Section 3729.

36. According to the government spending web site, AUB received approximately 23,500,000 in USAID grant funds over the last 6 years. These funds would have been received as a result of fraudulent certifications including those referred to above.

37. Accordingly, Relator seeks judgment in the amount of $70,500,000 against AUB and in favor of the United States, together with costs, interest, civil penalties, an appropriate qui tam award, and such other and further relief as the Court deems just.

Respectfully submitted,

David Abrams, Attorney at Law
Attorney for Relator

299 Broadway, Suite 1700
New York, NY 10007
Tel. 212-897-5821
Fax 212-897-5811

Dated: New York, NY
September 9, 2014

7