**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA *ex rel.*
███████████████████

Plaintiff,

v.

AMERICAN UNIVERSITY OF BEIRUT,

Defendant.

14 Civ. 6899 (JPO)

UNITED STATES OF AMERICA,

Plaintiff-Intervenor,

v.

AMERICAN UNIVERSITY OF BEIRUT,

Defendant.

### STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is
entered into by and among plaintiff the United States of America ("United States" or
"Government"), by its attorney, Joon H. Kim, Acting United States Attorney for the Southern
District of New York; the *qui tam* relator in the above-captioned action, ██████████████

█████████, by Relator's authorized representatives; and defendant American University
of Beirut ("AUB" and together with the Government and Relator, "Parties"), by its authorized
representatives;

WHEREAS, AUB, which is located in Beirut, Lebanon, operates under a charter granted by the Education Department of the State of New York and bases its educational philosophy, standards, and practices on the American liberal arts model of higher education;

WHEREAS, from December 2007 through March 2016 ("Covered Period"), AUB received federal grant funds from the U.S. Agency for International Development ("USAID"). AUB's receipt of those grant funds was conditioned on AUB submitting certifications to USAID as to how AUB had conducted certain of its operations and how it would conduct its operations in the future, including that before providing material support to any individual or entity, it would verify that the individual or entity was not a prohibited party under U.S. law.

WHEREAS, the Government alleges that, during the Covered Period, AUB's above-referenced certifications to USAID were false, because AUB intentionally or recklessly or with deliberate ignorance (1) provided journalism training to representatives of entities that were prohibited parties under U.S. law, and (2) allowed a particular Non-Governmental Organization ("NGO") that was a prohibited party under U.S. law to be included in a public database that AUB maintained for the purpose of connecting students interested in social work with relevant NGOs. As a result of the foregoing conduct, the Government alleges that AUB intentionally or recklessly or with deliberate ignorance presented or caused to be presented false claims for USAID grant funds, or made, used, or caused to be made or used false records and/or statements material to false claims for USAID grant funds, in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* The conduct described in this paragraph is the "Covered Conduct" for purposes of this Stipulation;

2

WHEREAS, on August 25, 2014, Relator filed a *qui tam* complaint against AUB in the United States District Court for the Southern District of New York ("Court"), and on September 14, 2014, Relator filed an amended *qui tam* complaint (collectively with the initial *qui tam* complaint, "Relator Complaint"). The Relator Complaint alleges that AUB had been receiving federal grant funds from USAID in violation of the FCA based on, *inter alia*, the Covered Conduct;

WHEREAS, contemporaneous with the filing of this Stipulation, the Government, through the Office of the United States Attorney for the Southern District of New York, is filing a Notice of Election to Intervene and a Complaint-In-Intervention in the above-referenced *qui tam* action ("Government Complaint"), in which it is asserting claims against AUB arising under the FCA for the Covered Conduct; and

WHEREAS, the Parties have, through this Stipulation, reached a mutually-agreeable resolution addressing the claims asserted against AUB in the Government Complaint and the Relator Complaint;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      AUB admits, acknowledges, and accepts responsibility for the following conduct, which occurred during the Covered Period:

> a.      As a condition of receiving funding from the U.S. Agency for International Development ("USAID"), AUB periodically submitted certifications to USAID, in which it represented, among other things, that before providing material support to any individual or entity, it would verify that the individual or entity was not a prohibited party under U.S. law.

3

    b.     During the period 2007 through 2009, as part of its Journalism Training Program, through which it provided training to print, broadcast and online journalists on various topics such as basic news reporting and writing, editing, and investigative journalism, AUB held on-campus workshops taught by experienced journalists, highly-regarded academics, and representatives from government organizations. The journalists who participated in the Journalism Training Program workshops were not required to pay expenses related to the workshops. The workshops were full-day events which typically took place over the course of several days.

    c.     Three of the Journalism Training Program workshops that AUB held during the period 2007 through 2009 were conducted in a manner that was inconsistent with AUB's certifications to USAID, in that they were attended by representatives of entities that were prohibited parties under U.S. law.

    d.     During the Covered Period, AUB maintained a public website that included a database of Non-Government Organizations ("NGOs"). The purpose of this database was to connect students interested in engaging in social work with relevant NGOs. The database provided contact information for each of the NGOs included in the database.

    e.     During the Covered Period, AUB included information in the NGO database that was inconsistent with its certifications to USAID. Specifically, AUB included in the NGO database an entity that was a prohibited party under U.S. law, along with contact information for that entity.

3.     AUB shall pay the Government $400,000 within fourteen (14) business days of the Effective Date (defined below in Paragraph 30). AUB shall pay the Government an additional $300,000 in accordance with paragraphs 3(a) through 3(d) below. The $700,000 referenced in the prior two sentences shall be referred to herein, collectively, as the "Settlement Amount." Payment of the Settlement Amount shall not be from funds provided to AUB by USAID or any other agency or instrumentality of the United States.

    a.     AUB shall pay the Government an additional $100,000 on or before January 3, 2018.

b.      AUB shall pay the Government an additional $100,000 on or before January 3, 2019.

c.      AUB shall pay the Government an additional $100,000 on or before January 3, 2020.

d.      If paying any of the amounts referenced above in Paragraphs 3(a) through 3(c), on the date such payment is due, would leave AUB with a Contingency Fund (defined below in this Paragraph) on that date of less than $4.2 million, AUB shall pay as much of the amount due on that date as would leave AUB with a Contingency Fund of $4.2 million after such payment, and it shall pay the remainder of the amount due on the earliest date thereafter where doing so would leave AUB with a Contingency Fund of at least $4.2 million after such payment. At all times until the Settlement Amount is paid in full, AUB shall seek in good faith to maintain a Contingency Fund of at least $5 million. For purposes of this Paragraph, the term Contingency Fund refers to the monies in AUB's operating budget that (1) are designated as a reserve for which no use is presently planned and (2) are used by AUB to pay debts or expenses in the case of unexpected shortfalls in revenue or unanticipated debts or expenses. To the extent AUB fails to pay any of the amounts referenced above in Paragraphs 3(a) through 3(c) in full on the date such payment is due, AUB shall provide a written account to the Government, in the manner set forth in Paragraph 29 below, of the amount of money comprising the Contingency Fund as of that date, why the Contingency Fund contained less than $5 million as of that date, and how and when AUB intends to return the Contingency Fund to a funding level of at least $5 million. Such written explanation shall be provided

5

within seven (7) calendar days of the due date of the relevant payment under Paragraph 3(a), 3(b) or 3(c).

4.      The payments required by Paragraph 3 above shall be made in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York.

5.      AUB shall revise its internal policies to ensure that it complies not only with applicable Lebanese laws, but also with applicable U.S. laws and the terms of the grants it receives. Such revisions — including revisions AUB has already made to its USAID Grant Compliance Policy and its Policy on Compliance with U.S. Economic Sanctions Programs in connection with the negotiation of this Stipulation (the revised USAID Grant Compliance Policy and Policy on Compliance with U.S. Economic Sanctions Programs are attached to this agreement as Exhibit A and any material violations of those policies would constitute a "Default" under Paragraph 11 below) — include providing for additional training of AUB administrative and academic staff on compliance with applicable U.S. laws and grant terms; regular audits by an external auditor of AUB's compliance with applicable U.S. laws and grant terms; and periodic reviews for purposes of making appropriate updates to relevant AUB internal policies and procedures. Upon request by USAID or any other U.S. agency that has provided AUB with grants or any other type of funding ("U.S. Funding Agency" and, collectively, "U.S. Funding Agencies"), AUB shall provide such U.S. Funding Agency with a list of the administrative and academic staff who received the above-referenced training, together with a description of the training they received. Further, upon request by any U.S. Funding Agency, AUB shall provide such U.S. Funding Agency with a written report, prepared by the above-referenced external auditor, of the results of each of the above-referenced audits, as well as a

6

description of any actions taken by AUB in response to such audits. Upon request, AUB shall also provide any U.S. Funding Agency with current copies of the policies it has enacted to ensure that it complies with applicable U.S. laws and the terms of the grants it receives.

6.      AUB agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement, consistent with AUB's obligations under Lebanese law. Upon reasonable notice, AUB shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. AUB further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf, as well as complete and unredacted copies of any other non-privileged documents in its possession, custody, or control relating to the Covered Conduct.

7.      Subject to the exceptions in Paragraph 10 below (concerning excluded claims) and Paragraph 18 below (concerning bankruptcy proceedings), and conditioned on AUB's full payment of the Settlement Amount as set forth in Paragraph 3 above, the United States releases AUB from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, or the common law theories of fraud, payment by mistake and unjust enrichment.

8.      Subject to the exceptions in Paragraph 18 below (concerning bankruptcy proceedings), and conditioned on AUB's full payment of the Settlement Amount as set forth in

7

Paragraph 3 above, Relator, and Relator's heirs, successors, attorneys, agents, and assigns, releases AUB from (a) any claims that Relator has asserted or could have asserted against AUB for any act, event, or conduct relating to the allegations in the Relator Complaint or the Government Complaint; and (b) any claims that Relator has on behalf of the United States for the conduct alleged in the Relator Complaint or the Government Complaint; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover Relator's expenses, costs, or attorney's fees from AUB pursuant to 31 U.S.C. § 3730(d).

9.     In consideration of the execution of this Stipulation by Relator, and the releases by Relator as set forth in Paragraph 8 above, AUB releases Relator, and Relator's heirs, successors, attorneys, agents, and assigns, individually and collectively, from any claims that AUB has asserted or could have asserted for any act, event, or conduct relating to the allegations in the Relator Complaint or the Government Complaint.

10.     Notwithstanding the releases given in Paragraph 7 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

a.     any liability arising under Title 26, United States Code (Internal Revenue Code);

b.     any criminal liability;

c.     except as explicitly stated in this Stipulation, any civil or administrative liability, including the suspension and debarment rights of any federal agency;

d.     any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

e.     any liability based upon obligations created by this Stipulation; and

8

          f.     any liability of individuals.

     11.     AUB shall be in default of this Stipulation if AUB fails to make the required payments set forth in Paragraph 3 above, or if it fails to comply materially with any other term of this Stipulation that applies to it ("Default"). The Government shall provide written notice of any Default in the manner set forth in Paragraph 29 below. AUB shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), AUB agrees to the entry of the consent judgment attached hereto as Exhibit B in the amount of $700,000 and that the Government may take action to collect on any portion of the Settlement Amount that has not yet been paid. In the event of an Uncured Default, AUB further agrees that interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning seven (7) business days after mailing of the notice of Default. In the event of an Uncured Default, AUB further agrees that the United States, at its option, may (a) rescind the releases in this Stipulation and pursue any claim that would otherwise be covered by the releases provided in Paragraph 7 above (in the event the Government rescinds the releases in this Stipulation, Relator could also pursue any claims in the Relator Complaint that would otherwise be released by this Stipulation); (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount (including interest) from any amounts due and owing AUB by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. AUB shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court.

9

In addition, AUB shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, AUB shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

12. Relator, and Relator's heirs, successors, attorneys, agents, and assigns, shall not object to this Stipulation but agree and confirm that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Subject to any claims that Relator may have under 31 U.S.C. § 3730(d) and the separate Stipulation and Order of Settlement and Release between Relator and the United States addressing Relator's share of the Settlement Amount, Relator, and Relator's heirs, successors, attorneys, agents, and assigns, releases, waives, and forever discharges the United States, its agencies, officers, agents, employees, and servants, from any claims, known or unknown, arising from the filing of the Relator Complaint and from any claims under 31 U.S.C. § 3730.

13. AUB waives and shall not assert any defenses AUB may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Stipulation constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

10

14.     AUB fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that AUB has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, or servants, related to the Covered Conduct, or the United States' investigation, prosecution and settlement of the Covered Conduct.

15.     This Stipulation is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity except as otherwise provided herein.

16.     In connection with the negotiation of this Stipulation, AUB represents that it has, in good faith, provided to the Government, in connection with the Government's assessment of AUB's ability to pay a monetary settlement, information concerning AUB's current operations and financial condition (the "Operations and Financial Information").  The Government has relied on the Operations and Financial Information in entering into this Stipulation, and, at its option, may rescind the releases in this Stipulation and pursue any claim that would otherwise be covered by the releases provided in Paragraph 7 above if the Operations and Financial Information is in any way materially false or misleading.

17.     AUB represents and warrants that it has reviewed its financial situation, that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and that it reasonably believes as of the date hereof that it shall remain solvent following compliance with its obligations under this Stipulation.  Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to AUB within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises,

11

covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which AUB was or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

18.     If AUB commences, or a third party commences, any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of AUB's debts, or seeking to adjudicate AUB as bankrupt or insolvent; or (b) seeking appointment of a trustee, custodian, or other similar official for AUB or for all or any substantial part of AUB's assets, AUB agrees as follows:

a.      AUB's obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and AUB shall not argue or otherwise take the position in any such case, action, or proceeding that (i) AUB's obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) AUB was insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to AUB.

b.      If AUB's obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its sole option, may rescind the releases in this Stipulation and pursue any civil and/or administrative claim, action, or proceeding against AUB that would otherwise be covered by the releases in Paragraph 7 above (in the event the Government rescinds the releases in this Stipulation, Relator could also pursue any claims in the Relator Complaint that would otherwise be released by this Stipulation).  AUB agrees that (i) any such claim,

12

action, or proceeding brought by the Government (or Relator) would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first clause of this Paragraph, and AUB shall not argue or otherwise contend that the claim, action, or proceeding is subject to an automatic stay; (ii) AUB shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government (or Relator) within 60 calendar days of written notification that the releases in the Stipulation have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the date the Relator Complaint was originally filed; and (iii) the Government has a valid claim against AUB for $700,000, and the Government may pursue the claim in the case, action, or proceeding described in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.    AUB acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

    19.    AUB agrees to the following:

      a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of AUB, and its present or former officers, directors, employees, shareholders, and agents, in connection with:

      (1)    the matters covered by this Stipulation;

      (2)    the United States' audit(s) and civil and/or criminal investigation(s) of matters covered by this Stipulation;

13

        (3)     AUB's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and/or criminal investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

        (4)     the negotiation and performance of this Stipulation; and

        (5)     any payments AUB makes to the Government pursuant to this Stipulation, and any payments that AUB may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

        b.     Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by AUB, and AUB shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

        c.     Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, AUB shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by AUB or any of its subsidiaries or affiliates from the United States. AUB agrees that the United States, at a minimum, shall be entitled to recoup from AUB any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine AUB's books and records and to disagree with any calculations submitted by AUB or any of its subsidiaries or affiliates

14

regarding any Unallowable Costs included in payments previously sought by AUB, or the effect of any such Unallowable Costs on the amount of such payments.

20.     Upon receipt of the initial, $400,000 payment described in Paragraph 7 above, the United States and Relator shall file pursuant to Rule 41(a)(1) a Notice of Dismissal of the Government Complaint and Relator Complaint, respectively. As to the United States, the dismissal shall be with prejudice only as to claims for the Covered Conduct that are being released pursuant to this Stipulation, and shall be without prejudice as to all other claims. As to Relator, the dismissal shall be with prejudice as to all claims in the Relator Complaint. However, the Court shall retain jurisdiction over this Stipulation to enforce AUB's obligations under the Stipulation, including its obligation to pay the remainder of the Settlement Amount.

21.     Except as set forth in Paragraph 8 above (which preserves Relator's rights against AUB to seek expenses, costs, and attorneys' fees), each Party shall bear its own legal and other costs incurred in connection with this matter.

22.     Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

23.     This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party in any subsequent dispute.

15

24.     This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Stipulation may not be amended except by written consent of the Parties.

25.     The undersigned counsel and any other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of persons and the entities indicated below.

26.     This Stipulation is binding on AUB and any successor entities.

27.     This Stipulation is binding on Relator's successors, transferees, heirs, and assigns.

28.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.  E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

29.     Any notices or requests pursuant to this Stipulation shall be in writing and shall be delivered by hand, express courier, or email transmission followed by postage-prepaid mail, and shall be addressed as follows:

IF TO THE UNITED STATES:

Christopher B. Harwood
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email: christopher.harwood@usdoj.gov

16

IF TO AUB:

Daniel S. Ruzumna
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
Email: druzumna@pbwt.com

30.     The Effective Date of this Stipulation is the date upon which the Stipulation is

approved and entered by the Court.

        Agreed to by:

### THE UNITED STATES OF AMERICA

Dated:          New York, New York
                March 2l, 2017

                         JOON H. KIM
                         Acting United States Attorney for the
                         Southern District of New York

                By:      _____

                         CHRISTOPHER B. HARWOOD
                         Assistant United States Attorney
                         86 Chambers Street, Third Floor
                         New York, New York 10007

                         *Attorney for the United States of America*

17

**RELATOR**

Dated:  March 19, 2017

By:  _____
DAVID ABRAMS
305 Broadway, Suite 601
New York, New York 10007

*Attorney for Relator*

**AUB**

Dated: March 19, 2017

PATTERSON BELKNAP WEBB &
TYLER LLP

By:

DANIEL S. RUZUMNA
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorney for AUB*

SO ORDERED:

HON. J. PAUL OETKEN
UNITED STATES DISTRICT JUDGE

Dated: March 23, 2017

19

# EXHIBIT A

**Policy on Compliance with the U.S. Economic Sanctions Programs**

As stated in its Non-Discrimination Policy, the American University of Beirut ("AUB" or the "University") is committed to the principle of equal opportunity in education and employment, and in the administration of its educational, admissions, and employment policies, and other university programs and activities. AUB does not discriminate on the basis of race, color, religion, age, national or ethnic identity, gender or gender identity, marital status, disability, genetic predisposition or carrier status, alienage or citizenship status, political affiliation, or any legally protected characteristic. As a U.S. educational institution, AUB also recognizes that it must comply with all applicable laws of the United States as well as the laws of Lebanon, the country in which it operates.

AUB shall take all appropriate steps to comply with U.S. economic sanctions programs, including by:

- Providing regular training to its relevant administrative and academic staff on compliance with applicable U.S. economic sanctions programs. The relevant administrative and academic staff to whom such training shall be provided will include the Provost, Associate Provost, relevant deans and any others responsible for confirming the information set forth in the next three bullets below.

- Confirming that the following individuals and entities are not included on the Specially Designated Nationals List ("SDN List") maintained by the U.S. Office of Foreign Assets Control ("OFAC"), in advance of hiring, engagement, invitation to the University, or contract execution, as applicable: (i) faculty and staff, (ii) contractors, vendors and suppliers, and (iii) unenrolled individuals or entities invited to AUB to receive training or expert advice or assistance. For purposes of this Policy on Compliance with U.S. Economic Sanctions Programs, the term "training" means instruction or teaching designed to impart a specific skill or skills, as opposed to general knowledge (including for purposes of discussion of policy), and the phrase "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge.

- Not allowing any individual to receive training or expert advice or assistance at AUB to the extent that AUB is on notice that the individual is receiving the training or expert advice or assistance in his or her capacity as a member or representative of an entity included on OFAC's SDN List.

- Not allowing any entity that is included on OFAC's SDN List to be included in AUB's Non-Governmental Organization ("NGO") database or any other database or tool maintained by or within the control of AUB, whose purpose, function or known effect is to put individuals in touch with NGOs or other entities.

- Engaging an external auditor to audit AUB's compliance with its policies and procedures designed to ensure its observance of U.S. economic sanctions laws and regulations, including the procedures described in this Policy on Compliance with U.S. Economic Sanctions Programs. Such audits shall be conducted on a regular basis, and not less than

2

annually.  AUB shall supplement the external audits with an audit by AUB's internal auditor at least one time annually.  AUB shall take appropriate steps to address any issues that may arise from such audits.

- Periodically reviewing and updating the University's policies and procedures relating to student, faculty and staff recruiting and employment, purchasing and procurement, grants and contracts, educational programming, and other University policies and procedures as appropriate, to reflect the foregoing.

Dated: March 17, 2017

## USAID Grant Compliance Policy

As a recipient of grants from the United States Agency for International Development ("USAID") in support of the University Scholarship Program ("USP") and other projects, the American University of Beirut ("AUB" or the "University") recognizes that USAID requires recipients to certify their compliance with certain U.S. federal laws and policies as a condition of their grants (the "Certifications").

In addition, as a corporation formed under the New York Education Law and governed by that law and the New York Not-for-Profit Corporation Law, and recognized as a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code, AUB recognizes it must adhere to all applicable U.S. federal and state laws, rules and regulations applicable to it in the operation of the USP, including in the selection of scholarship recipients, and other USAID funded projects.  AUB must also comply with the laws of Lebanon, the country in which it operates.

AUB shall take all appropriate steps to ensure compliance with the Certifications and with all applicable laws as described herein, including by:

- Providing regular training to its relevant administrative and academic staff on compliance with USAID grant terms and conditions and relevant U.S. federal and state laws relating to grant compliance.  The relevant administrative and academic staff to whom such training shall be provided will include the Provost, Associate Provost, relevant deans and any others responsible for implementing U.S. federal grants.

- Confirming that all recipients of USAID grants meet the requirements of the relevant grant agreements, including the Certifications, and are otherwise eligible for such aid.

- Engaging an external auditor to audit AUB's compliance with (i) the terms and conditions of its USAID grants, and (ii) its policies and procedures designed to ensure grant compliance, including the procedures described in this USAID Grant Compliance Policy.  Such audits shall be conducted on a regular basis, and not less than annually.  AUB shall supplement the external audit with an audit by AUB's internal auditor at least one time annually.  AUB shall take appropriate steps to address any issues that may arise from such audits.

- Periodically reviewing and updating the University's Office of Grants and Contracts Manual and Campus Purchasing Manual, and other University policies and procedures as appropriate, to reflect the foregoing.

- Complying with AUB's Policy on Compliance with U.S. Economic Sanctions Programs.

Dated: March 17, 2017